**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | |
| | : | **NO. 12-33** |
| **EVENS CLAUDE** | : | |

_____

**DuBOIS, J.**                                                                                       **January 16, 2013**

## M E M O R A N D U M

### I. INTRODUCTION

On June 6, 2012, a grand jury returned a Superseding Indictment charging defendant Evens Claude with two counts of conspiracy in violation of 18 U.S.C. § 371, seven counts of uttering counterfeit currency in violation of 18 U.S.C. § 472, two counts of access device fraud in violation of 18 U.S.C. § 1029(a)(2), eight counts of aggravated identity theft in violation of 18 U.S.C. § 1028A, two counts of bank fraud in violation of 18 U.S.C. § 1344, and one count of aiding and abetting in violation of 18 U.S.C. § 2. Presently before the Court is defendant's Motion to Suppress Statements and Evidence. The Court conducted an evidentiary hearing and heard oral argument on the motion on December 20, 2012. For the reasons set forth below, the Court grants in part and denies in part defendant's Motion to Suppress Statements and Evidence.

### II. BACKGROUND

On June 28, 2011, Johvany Marquez attempted to purchase diamond earrings worth $1,139 and a bracelet worth $2,999.99 from the Zales Jewelry Store at the Montgomery Mall in North Wales, Pennsylvania. (Tr. at 15; 23.) Mr. Marquez was accompanied in the store by Omar Laboy, who acted as an interpreter for Mr. Marquez; a third person, Jodaro Claude,

1

remained outside the store with his young son. (Tr. at 50-51; 55.) Mr. Marquez attempted to use the name, Social Security Number, address, and date of birth of Illuminada Alvarado to access a line a credit at Zales to purchase the merchandise. (Tr. at 15; 50.) This line of credit had been previously accessed on June 23, 2011. (Tr. at 22.) The sales clerk rejected the transaction, and Mr. Marquez left the store without the merchandise. Police Officer Todd Walter was then notified of the incident. (Tr. at 15-16.)

Officer Walter and mall security personnel met Mr. Marquez, Mr. Laboy, and Jodaro Claude at the lower mall level of the adjoining Macy's store. (Tr. at 16.) Officer Walter and mall security kept the suspects at Macy's until a store clerk from Zales could come to identify them. (Tr. at 52-55.) The store clerk identified Mr. Marquez as the person who attempted to use Ms. Alvarado's identification and Mr. Laboy as the interpreter for Mr. Marquez. (Tr. at 54-55.) The store clerk did not identify Jodaro Claude as being involved in the incident. (Tr. at 55.) Although Mr. Marquez could speak some English, Officer Walter used a mall maintenance worker as an interpreter in his questioning of Mr. Marquez. (Tr. at 20-21.) Officer Walter testified that he "had no question" about what Mr. Marquez was saying through the interpreter and that Mr. Marquez appeared to understand his questioning. (Tr. at 21; 64-65.) Officer Walter had used the mall maintenance worker in this capacity on prior occasions, but, because he "doubt[ed]" the maintenance worker was trained to interpret, he said he could not judge whether the maintenance worker had interpreted properly. (Tr. at 55-56.)

During the questioning, Mr. Marquez admitted using Ms. Alvarado's identification to attempt to make a purchase at Zales. (Tr. at 16.) He stated that Jodaro Claude's brother "E" had

sent him the information in a text message.[1] (Tr. at 16-17.) Although Mr. Marquez showed Officer Walter the cellphone on which the text message had been received, the battery on the cellphone was dead, and Officer Walter was unable to read the text message at that time. (Tr. at 17.) Mr. Marquez also stated that "E" had driven him, Mr. Laboy, Jodaro Claude, and Jodaro Claude's son to the mall. (Id.)

Jodaro Claude confirmed to Officer Walter that his brother "Evens" drove them to the mall. (Tr. at 17-18.) Jodaro Claude stated that he did not know the last name of his brother and did not know where his brother was at the time he was questioned. (Tr. at 18.) He said that his brother lived in the Boston, Massachusetts area but was in Pennsylvania for a funeral. (Tr. at 25-26.) Jodaro Claude also stated that his brother was going to pick him up from the mall. (Tr. at 64.) Officer Walter then asked Jodaro Claude to call his brother to ascertain his location. (Id.) Jodaro Claude called phone number 215-900-3738, which was associated with the contact "E" in his cellphone, and handed it to Officer Walter. (Tr. at 18-20.) Officer Walter spoke with a male on the cellphone but was unable to get information regarding the male's location. (Tr. at 19.)

Mr. Marquez was arrested for his involvement in the Zales incident. (Tr. at 21.) Mr. Laboy was also arrested on an outstanding warrant. (Id.) Jodaro Claude and his son were allowed to leave. (Id.) Officer Walter drove Mr. Marquez to the police station and turned him over for intake and processing. (Id.)

---

[1] In a letter to the Court received on December 24, 2012, defendant states that the cellphone from which the text message to Mr. Marquez was sent was actually in Mr. Marquez's possession at the time of the incident. Defendant further states that Officer Walter later realized this when Mr. Marquez used that cellphone to call his mother to pick him up from the police station that night. Defendant states that Officer Walter's police report reflects these facts, although the police report is not in the record before the Court and defendant was unable to provide an electronic copy of the report with his letter. In any case, these additional facts do not affect the Court's analysis, including whether Officer Walter had reasonable suspicion at the time of the vehicle stop, and the Court does not consider them. A copy of the letter received December 24, 2012 shall be docketed by the Deputy Clerk.

3

Officer Walter then returned to the mall, where two police officers and mall security personnel were observing Jodaro Claude to determine who would pick him up from the mall. (Tr. at 21-22.) Officer Walter observed Jodaro Claude run down a steep bank from the mall parking lot to Route 309, where a white "Chevy" was stopped in the right turn lane. (Tr. at 23-24.) As Jodaro Claude began to enter the vehicle, Officer Walter pulled up behind the vehicle and turned on his overhead lights. (Tr. at 24.) Officer Walter then approached the driver's side of the vehicle and had defendant exit the vehicle with his license and the rental agreement for the vehicle. (Tr. at 25; 36.) Officer Walter then directed defendant to stand at the rear of his vehicle. (Tr. at 38.) Defendant provided a driver's license with a Brockton, Massachusetts address. (Tr. at 25.) Officer Walter told defendant that he had stopped his vehicle because of the incident at the Zales and asked him if he knew Mr. Marquez or Mr. Laboy and whether he drove them to the mall. (Tr. at 29-30.) Defendant stated that he knew Mr. Marquez and Mr. Laboy but had not driven them to the mall. (Tr. at 29.) Officer Walter then had defendant return to his vehicle while Officer Walter checked defendant's information. (Tr. at 41-42.)

Officer Walter found no issues with defendant's license and rental agreement. (Tr. at 43.) He then returned the documents to defendant and asked him to provide his cellphone number. (Tr. at 27; 44.) Defendant refused to give Officer Walter his cellphone number. (Tr. at 27; 44-45.) Thereupon Officer Walter instructed defendant to "[p]lace [his] cellphone on the dashboard." (Tr. at 45.) Defendant complied and took his cellphone from an area not in plain view. (Tr. at 46.) Officer Walter then used his own cellphone to call the phone number 215-900-3738 that he copied from Jodaro Claude's cellphone. (Tr. at 27.) Officer Walter observed that defendant's cellphone began to vibrate when he dialed the number and ceased to vibrate

4

when he terminated the call.  (Tr. at 27; 47.)  Officer Walter then allowed defendant to leave without issuing him a traffic citation.  (Tr. at 48.)

Officer Walter estimated that the entire stop and investigation took approximately fifteen to twenty minutes.  (Tr. at 30-31.)  During the stop, a second officer was in a police vehicle with his overhead lights on behind Officer Walter.  (Tr. at 34.)  Both officers were in uniform.  (Tr. at 32.)  Officer Walter testified that during his stop and investigation, defendant was not free to leave the scene, although there is no evidence that Officer Walter told defendant of that restriction.  (Tr. at 40-41; 44-47.)  Officer Walter never informed defendant of his Miranda rights during the stop and never physically touched defendant.  (Tr. at 31; 62.)  Finally, Officer Walter never obtained a warrant to search defendant.

## III. LEGAL STANDARD

"On a motion to suppress, the government bears the burden of showing that each individual act constituting a search or seizure under the Fourth Amendment was reasonable." United States v. Ritter, 416 F.3d 256, 261 (3d Cir. 2005) (citing United States v. Johnson, 63 F.3d 242, 245 (3d Cir. 1995)).  The government must meet this burden by a preponderance of the evidence.  United States v. Matlock, 415 U.S. 164, 177 (1974).

## IV. DISCUSSION

Defendant seeks to suppress the statements and evidence arising out of the vehicle stop.  Specifically, defendant asserts that the stop went beyond the dictates of Terry.  See Terry v. Ohio, 392 U.S. 1 (1968).  He also argues that he was the subject of custodial interrogation in the absence of a Miranda warning.  See Miranda v. Arizona, 384 U.S. 436 (1966).  Defendant further argues that Officer Walter performed an unlawful search when he ordered defendant to produce

5

his cellphone. He asks that the government be precluded from using or referring to any and all information obtained from the encounter and all evidence derived therefrom.

A. Terry Stop

There does not appear to be any disagreement between the parties that Officer Walter's stop and detention of the defendant was a seizure for purposes of the Fourth Amendment. Therefore, the inquiry is whether the seizure was a permissible Terry stop.

"[I]f police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a Terry stop may be made to investigate that suspicion." United States v. Hensley, 469 U.S. 221, 229 (1985). "Reasonable suspicion is an 'elusive concept,' but it unequivocally demands that 'the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" Brown, 448 F.3d at 246 (citing United States v. Cortez, 449 U.S. 411, 417-18 (1981)). "In evaluating whether there was an objective basis for reasonable suspicion, we consider 'the totality of the circumstances—the whole picture.'" Brown, 448 F.3d at 246-47 (citing Cortez, 449 U.S. at 417).

In this case, Officer Walter had reasonable suspicion, based on specific and articulable facts, that defendant was involved in a completed felony. Mr. Marquez had admitted to Officer Walter that he attempted to use stolen identification information from Jodaro Claude's brother "E" to make a fraudulent purchase at Zales.[2] Jodaro Claude had told Officer Walter that his

---

[2] Defendant argues that Officer Walter should not have relied upon the statements from Mr. Marquez because they were interpreted by a mall maintenance worker not trained in interpretation. Officer Walter testified that, although the mall maintenance worker was not trained as an interpreter, he had used him in that capacity on prior occasions. Of more significance, it was Officer Walter's testimony that Mr. Marquez, who spoke some English, understood his questions, and Officer Walter "had no question" that he understood Mr.

6

brother Evens, who was under the contact information "E" in Jodaro Claude's cellphone, was going to pick him up from the mall. Officer Walter later observed Jodaro Claude leave the mall and run down a steep bank to a waiting vehicle on Route 309. These specific and articulable facts gave Officer Walter reasonable suspicion that Jodaro Claude's brother was the driver of the vehicle stopped on Route 309 and that he had provided Mr. Marquez the identification information of Ms. Alvarado to fraudulently make a purchase at Zales. Thus, the stop and brief detention of defendant was a proper Terry stop.

B.   Miranda Warning

Defendant argues that he was entitled a Miranda warning during his encounter with Officer Walter. In Miranda v. Arizona, the Supreme Court held that the prosecution cannot use statements "stemming from custodial interrogation of [a] defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda, 384 U.S. 436, 444 (1966). However, the Supreme Court has recently reaffirmed that "the temporary and relatively nonthreatening detention involved in a traffic stop or Terry stop does not constitute Miranda custody." Howes v. Fields, 132 S. Ct. 1181, 1190 (2012) (quoting Maryland v. Shatzer, 130 S. Ct. 1213, 1224 (2010) (internal citation omitted)).

The Court has determined that defendant was a subject of a brief Terry stop. See supra at IV.A. Therefore, defendant was not entitled to a Miranda warning before Officer Walter's questioning, and defendant's statements made during the stop are admissible against him.

C.   Production of Cellphone

Defendant argues that Officer Walter unlawfully searched him when the officer ordered him to place his cellphone on the dashboard of his vehicle. The government counters that

---

Marquez's answers. Under these circumstances, Officer Walter's reliance on the information provided by Mr. Marquez was reasonable.

7

Officer Walter was merely confirming the cellphone's location and the identity of defendant as the same person Officer Walter had earlier spoken to on Jodaro Claude's cellphone.

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967) (internal citations omitted). One exception to the warrant requirement is a search or seizure conducted pursuant to voluntary consent. See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). For consent to be voluntary, it cannot be "the product of duress or coercion, express or implied ...." Id. at 227. The government has "the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." Bumper v. North Carolina, 391 U.S. 543, 548-49 (1968) (internal citations omitted).

To determine whether consent was given voluntarily, a court examines the totality of the circumstances. United States v. Price, 558 F.3d 270, 278 (3d Cir. 2009). The Price court elaborated as follows:

> Both "the characteristics of the accused and the details of the interrogation" are useful to determine whether, under all the circumstances, a consent to search was voluntary, and no case should "turn[ ] on the presence or absence of a single controlling criterion." Factors to consider include: the age, education, and intelligence of the subject; whether the subject was advised of his or her constitutional rights; the length of the encounter; the repetition or duration of the questioning; and the use of physical punishment. We have further identified as relevant "the setting in which the consent was obtained [and] the parties' verbal and non-verbal actions."

Id. (internal citations omitted). "[W]hether consent was given is to be resolved by examining all relevant factors, without giving dispositive effect to any single criterion." United States v. Kim, 27 F.3d 947, 955 (3d Cir. 1994).

In this case, defendant did not give consent to search for his cellphone. As defendant sat in his vehicle, Officer Walter stood over him and questioned him about his cellphone. Officer Walter did not advise defendant of his constitutional rights before or during this questioning. Officer Walter initially asked defendant for his cellphone number, and defendant declined to provide the number. This refusal demonstrates that defendant had no desire to voluntarily give Officer Walter information about his cellphone. In response to this refusal, Officer Walter ordered defendant to "[p]lace [his] cellphone on the dashboard," and he complied. (Tr. at 45-46.) This mere "acquiescence to a claim of lawful authority" does not constitute voluntary consent. See Bumper, 391 U.S. at 548-49.

On December 31, 2012, the Fourth Circuit issued an opinion which is based on similar, but distinguishable, facts, in which the court held that the temporary seizure of a cellphone to determine if it would ring when a certain phone number was called did not require a showing of probable cause and was not illegal. United States v. Lawing, 2012 WL 6734785 at *5-6 (4th Cir. Dec. 31, 2012). This Court concludes the Lawing case is distinguishable on the ground that the cellphone in that case was in plain view on the center console of the vehicle, whereas in the instant case the defendant had the cellphone in an area not in plain view.

The Lawing court relied on United States v. Place, 462 U.S. 696, 706 (1983), which held that in certain circumstances, a Terry-type temporary seizure of luggage from a suspect's custody for the purpose of pursuing a limited course of investigation is permitted. The Lawing court used Place to justify the temporary seizure of Lawing's cellphone, which had been placed on the center console of the vehicle in plain view. Lawing, 2012 WL 27734785 at *6. In the instant case, defendant's cellphone was in an area not in plain view, and thus, unlike Lawing, for Officer Walter to temporarily seize the cellphone, he first ordered defendant to produce it. This

9

directive, not present in Lawing, constituted an involuntary search of defendant. The subsequent temporary seizure of the cellphone once produced cannot be justified under Place, and the opinion in Lawing does not inform the result in the instant case.

Without consent, the action of Officer Walter was the equivalent of an unlawful search. The cellphone in this case was not in plain view, and defendant did not agree to produce it until ordered to do so. Thus, Officer Walter's directive to defendant to "[p]lace [his] cellphone on the dashboard" amounted to an unlawful search in violation of the Fourth Amendment.

D. Exclusionary Rule

"The fact that a Fourth Amendment violation occurred – i.e., that a search or arrest was unreasonable – does not necessarily mean that the exclusionary rule applies." Herring v. United States, 555 U.S. 135, 140 (2009). "To determine whether to apply the rule in a particular case, [courts] weigh the benefits of the rule's deterrent effects against the costs of exclusion, which include 'letting guilty and possibly dangerous defendants go free.'" United States v. Tracey, 597 F.3d 140, 151 (3d Cir. 2010) (citing Herring, 555 U.S. at 141). Courts exclude evidence when "police conduct is 'deliberate, reckless, or grossly negligent,' or when it will deter 'recurring or systemic negligence.'" Tracey, 597 F.3d at 151 (citing Herring, 555 U.S. at 144).

In this case, the information gained from the unlawful search must be suppressed. Officer Walter either deliberately or recklessly ignored the lack of consent from defendant to provide information about the cellphone. Indeed, after his request for defendant's cellphone number was rebuffed, he then ordered defendant to do what he himself could not do: namely, search defendant for his cellphone. The resulting evidence – that defendant had a cellphone in his possession and that the cellphone rang when Officer Walter dialed the number he previously obtained from Jodaro Claude – must be suppressed.

## V. CONCLUSION

For the foregoing reasons, defendant's Motion to Suppress Statements and Evidence is granted in part and denied in part.

An appropriate order follows.